FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

2016 DEC -5  AM 11: 28

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

NATIONAL URBAN LEAGUE, INC.,

                Plaintiff,

Civil Action No. 8:16-cv-3332-T-33MAP

vs.

EQUALITY FLORIDA, INC.,
EQUALITY FLORIDA INSTITUTE, INC., and
EQUALITY FLORIDA ACTION, INC.,

**COMPLAINT and
DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT**

                Defendants.

_____/

     Plaintiff, the National Urban League, Inc., by and through its attorneys, Patterson

Belknap Webb & Tyler LLP, for its Complaint against Defendants, Equality Florida, Inc.,

Equality Florida Institute, Inc., and Equality Florida Action, Inc., hereby alleges as

follows:

### PRELIMINARY STATEMENT

     This is a trademark infringement action brought under both federal and state law.

Plaintiff, the National Urban League, Inc. ("National Urban League" or "NUL") brings

this action for injunctive relief and damages to stop Equality Florida, Inc., Equality

Florida Institute, Inc., and Equality Florida Action, Inc. (collectively, "Equality Florida")

from continued use of a promotional image that infringes upon the National Urban

League's federally registered trademark.  The National Urban League has been using its

mark continuously in commerce for nearly fifty years.

TPA0405/0
7400-

The National Urban League is a nonprofit civil rights organization founded in 1910 to combat segregation and the inequalities faced by African Americans and other minorities in the United States. NUL offers a wide range of programs and services to secure equality via economic self-reliance, parity, power, and civil rights nationwide.

Since February 2010, Equality Florida—a not-for-profit advocacy organization that campaigns for equal rights for Florida's lesbian, gay, bisexual, and transgender community—has utilized a logo in its fundraising, marketing, political, and administrative materials, among others, that is confusingly similar—indeed, nearly identical—to NUL's registered trademark. As both NUL and Equality Florida are charitable organizations seeking to promote social equality and civil rights for marginalized persons, the parties are direct competitors, and consumers have been and will continue to be misled by Equality Florida's use of a mark confusingly similar to NUL's mark. Defendants' continued use of their infringing mark also dilutes NUL's mark. Despite multiple attempts by NUL to resolve the dispute amicably, Equality Florida has continued its unlawful use of the infringing mark.

## THE PARTIES

1.    Plaintiff National Urban League is a nonprofit corporation whose principal place of business is 120 Wall Street, New York, New York 10005.

2.    Defendants, Equality Florida, Inc., Equality Florida Institute, Inc., and Equality Florida Action, Inc., are nonprofit corporations organized and existing under the laws of the State of Florida, with a principal place of business at 2459 37th Avenue North, St. Petersburg, Florida 33713.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to Title 15, United States Code, § 1121 (the Lanham Act); Title 28, United States Code, § 1331 (federal question); and Title 28, United States Code, § 1367 (supplemental jurisdiction).

4.      This Court has personal jurisdiction over Defendants, given Defendants' presence and principal place of business in this District.  Also, the conduct that forms the basis of this Complaint occurred in this District.

5.      Venue is proper in the Middle District of Florida pursuant to Title 28, United States Code, §§ 1391(b)(1) and 1391(b)(2).

## GENERAL ALLEGATIONS

### The National Urban League

6.      NUL is a civil rights organization founded in 1910 to combat the segregation and inequality faced by African Americans in our nation.  The mission of the Urban League Movement is to enable minorities and marginalized persons to secure equality, economic self-reliance, and civil rights in the United States.  Since its inception, NUL has worked tirelessly to advance its mission.

7.      Over the last century, NUL has evolved into a robust and dynamic organization that has launched programs and initiatives across the country related to equality, education, jobs, housing, and healthcare assistance.  Today, NUL, through its ninety-two affiliates, provides direct services to more than 2.8 million individuals

nationwide. The public has come to recognize NUL for its services to urban and low-income citizens.

8.      In 1968, NUL began using its logo (the "NUL Mark")—an equal sign enclosed in a circle—to advertise its programs and services. NUL has continued to use the NUL Mark in commerce to promote its services for nearly fifty years.

9.      The NUL Mark was registered with the U.S. Patent and Trademark Office ("USPTO") on December 22, 1992 (U.S. Registration No. 1,742,003). (A true copy of the certified registration is attached as **EXHIBIT A**.)

10.      NUL's registration of the NUL Mark has become incontestable as a matter of law under Title 15, United States Code, § 1065, by virtue of NUL's continued use of the NUL Mark in commerce for at least five consecutive years.

11.      According to its filing, the NUL Mark covers a variety of community services "designed to secure equal opportunities for Negroes and other minorities in all areas of American life with special emphasis on housing, health and welfare, education and employment." (**EXHIBIT A**.) The mark appears—and has appeared for decades—on virtually all of NUL's promotional materials, including materials displayed in the State of Florida. The registered mark is a well-known symbol of NUL and NUL has expended significant time, resources, and effort in marketing and promoting its services via use of the NUL Mark.

12.      NUL has built up substantial valuable goodwill in the NUL Mark. The mark has acquired a degree of recognition through continued use and the expenditure of time, effort, and money in advertising and promotion, and serves as a unique identifier of

the services offered by NUL.

13.     NUL registered the NUL Mark without regard to color; however, NUL generally prints the NUL Mark in red against a white background.   At other times, the mark is displayed in white against a red background.   When photocopied, or where the service mark is displayed in black and white, NUL's symbol is indistinguishable from an identical logo that uses a different color but that also incorporates an equal symbol enclosed in a circle—such as Defendants'.  The NUL Mark looks like this:



14.     Only NUL and those organizations which have qualified through NUL to join the NUL franchise as official affiliates are permitted to use the NUL Mark.

15.     NUL has seven affiliates that operate and offer services to Floridians using the NUL Mark.  The Florida NUL affiliates are located in St. Petersburg, West Palm Beach, Orlando, Jacksonville, Fort Lauderdale, Tallahassee, and Miami.  These NUL affiliates work to help marginalized people in their localities seek equality via access to education; jobs with a living wage; safe, decent, and affordable housing; quality and affordable health care; and more.

16.     For example, the Pinellas County Urban League, based in St. Petersburg (Defendants' principle place of business), has been active in that area since 1978.  Over the last forty years, this NUL affiliate has launched countless programs, all branded with

the NUL Mark, including the Nurses Tutoring Program, the Juvenile Welfare Board, the Comprehensive Family Services Program, the Black-on-Black Crime Prevention Program, the Crime Prevention and Intervention Program, the Vocational Education Support Program, the Competency-Based Remediation and Skill Development Program, the Peer Power Program, the Weatherization Assistance Program, the Low-Income Emergency Home Repair Program, the Health Screening Program, and many more.  The St. Petersburg affiliate also presents many public events that prominently utilize the NUL Mark, such as an Expungement/Sealing Expo in November 2016.

17.     In addition, NUL has organized national events in Florida that prominently employ the NUL Mark, such as its 2015 National Urban League conference, "Save Our Cities," in Fort Lauderdale.  Speakers and panels presented for four days to an audience of thousands on topics related to economics, politics, and civil rights—against a backdrop prominently featuring the NUL Mark.

18.     Just as the public has come to recognize NUL for its services to urban and low-income citizens, it has also come to associate the mark with NUL, its services, and its work for equality, economic empowerment, civil rights, and more.

<u>**Equality Florida's Use of the Infringing Mark**</u>

19.     Equality Florida was founded in 1997—almost 30 years after NUL began using the NUL Mark—and consists of two organizations: Equality Florida Institute, Inc., a 501(c)(3) educational charity, and Equality Florida Action, Inc., a 501(c)(4) advocacy organization.

20.     Like NUL, Equality Florida identifies itself as a civil rights organization that seeks equality for marginalized persons.  On its website, Equality Florida describes itself as "the largest civil rights organization dedicated to securing full equality for Florida's lesbian, gay, bisexual, and transgender (LGBT) community."  (*See http://www.eqfl.org/about.*)

21.     On March 27, 2012, Equality Florida obtained a federal registration for a mark strikingly similar to that of NUL (U.S. Registration No. 4,118,423), but with the word "Equality" written above the word "Florida" to the right of the symbol.  Like the NUL Mark, Equality Florida's mark consists of an equal sign fully enclosed inside a circle.

22.     Equality Florida's mark is often depicted as a white equal sign enclosed in a green circle with a double border of white and black.  It is often used without the accompanying words "Equality Florida," as set forth in its federal registration.  When photocopied in black and white, Equality Florida's mark simply appears as a stylized equal sign enclosed in a circle—nearly identical to the NUL Mark.

23.     For example, on information and belief, this is an accurate representation of Equality Florida's mark, without the accompanying text, when it appears against a green background:



24.     At other times, Equality Florida's mark appears as a translucent white symbol through which the color of the graphics behind shows.  On information and belief, the graphic below was created by and distributed by Equality Florida.[1]  It depicts the mark as a translucent, white logo in the upper right corner of the graphic—once again, the phrase "Equality Florida," as employed in Equality Florida's trademark registration, has been omitted:



25.     When presented virtually colorless and in this context—without the accompanying "Equality Florida" text and adjacent to a message about equality, a value with which NUL is strongly associated—the infringing mark is indistinguishable from the NUL Mark.

---

[1] This graphic was found on Equality Florida's website.  (*See http://www.eqfl.org/2014goals*.)

26.     For the past several years, Equality Florida has used the infringing mark, without the words "Equality" and "Florida," in connection with a wide range of activities. For example, it displays the mark on its website, where it requests donations and solicits sponsorships for events such as galas, for which tickets cost a minimum of $500.00.  (*See http://www.eqfl.org/.*)

27.     The Equality Florida mark also is featured prominently on reports and pamphlets distributed by Equality Florida, which inform the public as to advances in LGBT rights and urge individuals to work for pro-equality policy changes.  (*See http://www.eqfl.org/sites/default/files/publications/2010_Winning_Equality_Report.pdf.*)

28.     The Equality Florida mark appears on t-shirts worn by Equality Florida volunteers and is emblazoned on promotional materials at events held throughout Florida, such as Pride celebrations, "Lobby Days" at the Florida legislature, and concerts.  (*See, e.g., http://www.eqfl.org/OcalaBlog15; http://www.eqfl.org/2016_FLLeg; http://www.eqfl.org/node/3883.*)

29.     Equality Florida frequently uses the infringing mark on press releases, mailings, and graphics touting the organization's work.  (*See http://www.eqfl.org/ 2014goals.*)

30.     In addition, Equality Florida operates an Internet store, where consumers can purchase shirts, teddy bears, hats, mugs, and other products bearing the mark.  (*See http://www.cafepress.com/eqfl.*)

31.     Such acts by Equality Florida are likely to confuse, and have confused, the public to such an extent that the public believes that NUL and Equality Florida are related when, in fact, they are not.

### The National Urban League Demands that Defendants Cease Their Infringing Activities

32.     On March 26, 2013, NUL sent a cease-and-desist letter to Equality Florida's legal counsel, notifying Equality Florida that NUL considers its use of an equal symbol enclosed in a circle to constitute trademark infringement.

33.     While commending Equality Florida's mission and its pro-equality work, NUL explained that Equality Florida's continued use of the logo would lead to public confusion and dilution of the NUL Mark in violation of NUL's rights under the Lanham Act.

34.     Specifically, NUL was concerned that the public—including current and prospective donors—would incorrectly infer a relationship between NUL and Equality Florida, particularly given the similarity of the organizations' respective missions to promote equality and civil rights.  NUL, however, has no relationship with Defendants and they are not official affiliates of NUL.

35.     After receiving NUL's first cease-and-desist letter, Equality Florida persisted in its use of the infringing mark.

36.     As a result, on May 11, 2016, NUL reiterated its demand that Equality Florida refrain from further use of the symbol.

37.     On May 16, 2016, Equality Florida informed NUL that it would not discontinue its use of the infringing mark, and has continued to feature the infringing image in its marketing materials and online platforms.

38.     Simultaneous with its filing in this Court, NUL has filed a petition with the USPTO before the Trademark Trial and Appeal Board to cancel the registration of Equality Florida's service mark.

39.     All conditions precedent to the institution and maintenance of this action have occurred or have been satisfied.

## CAUSES OF ACTION

### COUNT I

**Federal Trademark Infringement**
**15 U.S.C. § 1114(1) (Lanham Act, § 32(1))**

40.     NUL repeats and incorporates the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     NUL is the owner of all right, title, and interest in and to the NUL Mark.

42.     The NUL Mark is inherently distinctive and has achieved secondary meaning as referenced by registration of the NUL Mark.

43.     Defendants, without authorization, have used a mark containing an equal sign inside a circle without the words "Equality" and "Florida," which is a colorable imitation of the NUL Mark, in connection with the advertisement of programs and services of an organization not affiliated with or endorsed by NUL.

44.     Defendants' past use and confirmed use of a mark that is confusingly similar and nearly identical to the NUL Mark are likely to cause confusion or mistake

among consumers of NUL's services as to the source of origin or affiliation of the non-affiliated services.  Such confusion results in the public erroneously believing there is some affiliation or association between NUL and Equality Florida, when there is not.

45.     Defendants' acts have injured and are likely to cause imminent injury to the image and reputation of NUL with consumers in this judicial district and elsewhere in the United States, and have caused a diminution of the value of the goodwill associated with the NUL Mark and a potential loss of funding for NUL, by creating a perceived association between the parties.  Any resulting dissatisfaction with Equality Florida will be borne by NUL organizations and services.

46.     Defendants' acts have been committed knowingly, deliberately, and willfully, with knowledge of NUL's exclusive right to and goodwill in the NUL Mark.  Defendants' acts also have been committed with knowledge that they are infringing the NUL Mark.

47.     Defendants are using the NUL Mark with knowledge, bad faith, and intent that such use would cause confusion, mistake, or would deceive consumers of the services NUL provides.  These acts constitute violations of 15 U.S.C. § 1114(1)(a).

48.     As a direct and proximate result of Defendants' trademark infringement, Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the NUL Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

49.     If not restrained, Defendants will have confused and misled and will continue to confuse and mislead consumers and funders of NUL's services as a result of

their acts of infringement, particularly in the seven cities in which NUL has Florida affiliates.

50.     The acts alleged herein constitute infringement of the NUL Mark under 15 U.S.C. § 1114(1).  Plaintiff NUL has no adequate remedy at law.  Hence, Plaintiff is entitled to injunctive relief, damages, profits obtained by Defendants as a result of their conduct, and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118.

51.     Defendants' deliberate and intentional infringement makes this an exceptional case under 15 U.S.C. § 1117(a) and allows for the recovery of Defendants' profits, treble damages, and costs of this action, including attorneys' fees and costs.

## COUNT II

### Federal Unfair Competition
### 15 U.S.C. § 1125(a) (Lanham Act, § 43(a))

52.     NUL repeats and incorporates the allegations set forth in paragraphs 1 through 51 above of this Complaint as if fully set forth herein.

53.     Defendants, without authorization, have used in interstate commerce on their websites and in communications for their independent programs and services a mark which is a colorable imitation of, and confusingly similar to, the NUL Mark.

54.     Moreover, the nature, quality, and extent of services advertised and offered by Defendants is narrower and more limited than the quality of services offered by the NUL and its affiliates.  Such use of the NUL Mark by Equality Florida is likely to cause confusion, mistake, or to deceive as to affiliation and the origin, sponsorship, or approval of the services advertised by Equality Florida.

55.     Through Equality Florida's use of the NUL Mark and its marketing efforts, it has misrepresented the true nature of it services as being affiliated or associated with NUL.

56.     Defendants' acts have injured and are likely to injure the image and reputation of NUL with consumers in this judicial district and elsewhere in the United States, by causing consumer confusion, a diminution of the value of the goodwill associated with the NUL Mark, and a loss of public involvement in and funding for NUL.

57.     Defendants' past acts and continued acts have been committed with knowledge of Plaintiff's exclusive common law rights and goodwill in the NUL Mark, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

58.     Defendants' actions have created and are likely to create confusion in the mind of reasonable consumers with regard to the affiliation or sponsorship between the parties, and constitute false designation of the origin of the services entering commerce on behalf of Equality Florida as false descriptions and representations of those services.

59.     Plaintiff has suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to its rights in and to the NUL Mark, and the goodwill and reputation associated therewith for which Plaintiff has no adequate remedy at law.

60.     If not restrained, Defendants will have unfairly derived funding and other opportunities as a result of their acts of infringement, particularly in the seven cities in which NUL has Florida affiliates.

61.     The acts alleged herein constitute infringement of the NUL Mark under 15

U.S.C. § 1125(a).

62.     Plaintiff NUL has no adequate remedy at law.  Hence, Plaintiff is entitled

to injunctive relief, damages, profits obtained by Defendants as a result of their conduct,

and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and to reasonable

attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

## COUNT III

### Federal Trademark Dilution
### 15 U.S.C. § 1125(c) (Lanham Act, § 43(c))

63.     NUL repeats and incorporates the allegations set forth in paragraphs 1

through 62 above of this Complaint as if fully set forth herein.

64.     The NUL Mark is famous and distinctive within the meaning of 15 U.S.C.

§ 1125(c).

65.     The NUL Mark is widely recognized by the general consuming public of

the United States as a designation that NUL is the source of services, including services

related to seeking equality for marginalized persons, in areas including—but not limited

to—housing, education, healthcare, and job training.

66.     Since the NUL Mark has become famous, Defendants have begun

utilizing marks in commerce that are likely to cause dilution by blurring of Plaintiff's

famous NUL Mark.

67.     Defendants are making commercial use of the NUL Mark for their

monetary gain.

68.     Defendants' improper use of the NUL Mark results in a likelihood of dilution of the distinctive value of NUL's famous mark and of NUL's reputation as a nationally recognized civil rights organization in existence since 1910.

69.     Defendants' acts greatly and irreparably damage Plaintiff and will continue to do so unless restrained by this Court. Therefore, Plaintiff is without an adequate remedy at law and is entitled to, among other things, an Order enjoining and restraining Defendants from use of the famous NUL Mark or a confusingly similar mark.

## COUNT IV

### Common Law Trademark Infringement

70.     NUL repeats and incorporates the allegations set forth in paragraphs 1 through 69 above of this Complaint as if fully set forth herein.

71.     Defendants' acts constitute an infringement of Plaintiff's trademark rights in the NUL Mark in violation of common law, including the common law of the State of Florida and elsewhere.

72.     As a result of Defendants' acts, Plaintiff has suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to its rights in and to the NUL Mark, and to the goodwill associated therewith, for which Plaintiff has no adequate remedy at law.

## COUNT V

### Common Law Unfair Competition

73.     NUL repeats and incorporates the allegations in paragraphs 1 through 72 above of this Complaint as if fully set forth herein.

74.     Defendants' acts constitute an infringement of and unfair competition with Plaintiff's trademark rights in violation of common law, including the common law of the State of Florida and elsewhere.

75.     The NUL Mark is distinctive under federal and state law, and is renowned and widely recognized as representing NUL.

76.     Since the NUL Mark has become famous—and, perhaps, because the mark has become famous—Defendants have begun utilizing a confusingly similar service mark in connection with programs and services of an organization not affiliated with or endorsed by NUL.

77.     Defendants' acts of infringement are likely to cause confusion among consumers and funders of NUL's services as to the source of origin or affiliation of the non-affiliated services.

78.     As a result of Defendants' acts, Plaintiff has suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to its rights in and to the NUL Mark, and to the goodwill associated therewith for which Plaintiff has no adequate remedy at law.

## COUNT VI

### State Unfair Competition
### Fla. Stat. § 501.204 (Florida Deceptive and Unfair Trade Practices Act)

79.     NUL repeats and incorporates the allegations set forth in paragraphs 1 through 78 above of this Complaint as if fully set forth herein.

80.     Defendants' unauthorized use of a service mark confusingly similar to Plaintiff's constitutes unfair methods of competition and unfair or deceptive practices in violation of Fla. Stat. § 501.204.

81.     As a result of Defendants' acts, Plaintiff has suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to its rights in and to the NUL Mark, and to the goodwill associated therewith for which Plaintiff has no adequate remedy at law.

82.     Therefore, NUL is entitled to injunctive relief, damages, reasonable attorneys' fees, and other remedies provided by Fla. Stat. § 501.211.

## COUNT VII

### State Trademark Dilution
### Fla. Stat. § 495.151

83.     NUL repeats and incorporates the allegations set forth in paragraphs 1 through 82 above of this Complaint as if fully set forth herein.

84.     The NUL Mark has become famous and distinctive within the meaning of Fla. Stat. § 495.151, and is widely recognized by the public throughout the State of Florida and elsewhere to refer to and identify NUL's services, including services related to housing, education, healthcare, and jobs.

85.     Since the NUL Mark has become famous, Defendants have begun utilizing marks that are likely to cause dilution by blurring of the famous NUL Mark.

86.     Defendants' acts greatly and irreparably damage Plaintiff and will continue to do so unless restrained by this Court.  Therefore, Plaintiff is without an adequate remedy at law and is entitled to, among other things, an Order pursuant to Fla.

Stat. § 495.151, enjoining and restraining Defendants from use of a mark substantially similar to the famous NUL Mark.

## PRAYER FOR RELIEF

**WHEREFORE,** NUL requests that the Court enter judgment in its favor and grant the following relief:

1.      That Defendants' aforementioned acts be declared to be an infringement of NUL's registered trademark in violation of the trademark laws of the United States, Title 15, United States Code, §§ 1114 and 1125(a), and that Defendants, their respective shareholders, directors, officers, agents, servants, employees, assigns, privies, affiliated companies and all persons in active concert or participation with them, and all those controlled by them, be permanently enjoined as follows:

a.      From using the infringing mark or any variation thereof in commerce, including on any website or in any other print or social media, in a manner that is not deemed fair use under applicable law;

b.      Requiring Defendants, with respect to the conduct of their business and marketing:

i.      To cease using the infringing mark;

ii.      To disable and/or deliver to the Court for impounding all advertisements, catalogues, brochures, or other printed material in their possession, custody, or control which display the infringing mark other than in fair use;

iii.      To cancel and withdraw all advertisements, tweets, blogs, or other marketing and publicity-related activities generated by Defendants containing the infringing mark;

iv.      To provide to the Court a report, in writing and under oath, that details the manner and form of their compliance with the injunction, pursuant to Title 15, United States Code, § 1116(a); and

v.      To perform other and such further acts as may be reasonably necessary to eliminate any confusion in the minds of the consuming public as to the nonexistence of any relationship between NUL and Defendants;

2.      That Defendants' aforementioned acts be adjudged to be unfair methods of competition, passing off, and trademark dilution and that, by virtue thereof, NUL be awarded the permanent injunctive relief set forth in paragraph 1 above;

3.      Pursuant to Title 15, United States Code, § 1117, that Defendants be ordered to:

a.      Account for and pay over to NUL all gains, profits, and advantages derived by them by said trademark infringement, false designations of origin, passing off, false description or representation of their services, from their said unfair competition and deception and unfair trade practices; and

b.      Pay NUL damages arising from the above-described acts in a just amount to be determined at the trial of this action and in accordance with Title 15,

United States Code, § 1117(a), together with costs, disbursements, and reasonable attorneys' fees;

4.      That this Court adjudge that Defendants' use of the infringing mark is not a fair use of that mark by Defendants;

5.      That the aforesaid acts of Defendants be adjudged to be unfair competition under the common law of the State of Florida and that NUL be granted injunctive relief and awarded damages as determined at trial;

6.      That this Court find that Defendants have violated the Florida Unfair and Deceptive Trade Practices Act and will continue to use unfair and deceptive trade practices unless enjoined from doing so;

7.      That Defendants' aforementioned acts be adjudged to be trademark dilution within the meaning of Fla. Stat. § 495.151 and that NUL be granted injunctive relief and awarded damages as determined at trial;

8.      That NUL be awarded damages in the amount that Defendants, by their wrongful conduct, have unjustly enriched themselves;

9.      That NUL be awarded punitive damages in an amount to be determined at trial, by reason of Defendants' willful, wanton, and intentionally deceptive conduct and infringing activities as set forth above;

10.     That NUL be awarded its costs and attorneys' fees;

11.     An Order to the Commissioner of the USPTO to cancel United States Trademark Registration No. 4,118,423 from the Principal Register, pursuant to Title 15, United States Code, § 1119; and

12.     That NUL be awarded such other and further relief as this Court may deem just, proper, and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable.

DATED:   December 2, 2016                Respectfully submitted,

_____

Peter C. Harvey (*Pro hac vice* pending)
NY 1921568
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2810
Facsimile:  (212) 336-2222
E-mail:  pcharvey@pbwt.com

Lansing C. Scriven
FL 729353
TRENAM LAW
101 East Kennedy Boulevard
Suite 2700
Tampa, FL 33602
Telephone:  (813) 227-7430
Facsimile:  (813) 227-0430

*Attorneys for Plaintiff*
*National Urban League, Inc.*

23